## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |
|---|---|
| **JAMIE LIGGIO;** | **CASE NO.** |
| *Plaintiff,* | |
| **v.** | **JURY TRIAL DEMANDED** |
| **LOUDOUN COUNTY SCHOOL BOARD; JOHN DUELLMAN; MICHAEL FITZGERALD and MARCO PEREIRA;** | |
| *Defendants.* | |

## COMPLAINT

### I.    INTRODUCTION

This is an action arising from violation of Plaintiff's Constitutional rights occurring at Rock Ridge High School within the Loudoun County School District. Plaintiff is seeking damages for Defendants' Constitutional violations.

### II.    PARTIES

1.    Plaintiff Jamie Liggio was employed as a special education teacher at Rock Ridge High School in the Loudoun County School District in Ashburn, Virginia. Plaintiff is a resident of the State of Virginia.

2.     Defendant Loudoun County Public Schools ("LCPS") is a public school system located in Ashburn, Virginia. LCPS receives federal funds as a public institution and is governed through the Loudoun County School Board ("LCSB"). LCPS has received federal funding at all times relevant to this litigation.

3.     Defendant John Duellman ("Duellman") was at all times relevant to this litigation the Principal at Rock Ridge High School within LCPS. Upon information and belief Duellman is a resident of the State of Virginia.

4.     Defendant Michael Fitzgerald ("Fitzgerald") was at all times relevant to this litigation the Assistant Principal at Rock Ridge High School within LCPS. Upon information and belief Fitzgerald is a resident of the State of Virginia.

5.     Defendant Marco Pereira ("Pereira") was at all times relevant to this litigation the Title IX Deputy Coordinator at Loudoun County Public Schools. Upon information and belief Marco Pereira is a resident of the State of Virginia.

### III.    JURISDICTION & VENUE

6.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

7.     Venue in this action is proper in the Eastern District of Virginia because the events relevant to this action occurred primarily within the geographical confines of the Eastern District of Virginia.

## IV.   FACTUAL ALLEGATIONS

8.    Plaintiff started her employment with LCPS on September 26, 2023 at Rock Ridge High School as a special education teacher.

9.    Soon after her employment began, Plaintiff began facing horrendous assaults at the hands of a student that LCPS did nothing to curtail.

10.    Defendants Duellman and Fitzgerald advised Plaintiff that Rock Ridge High School was given the Self-Contained Program for students with Intellectual Disabilities and Autism Spectrum Disorders for LCPS without any inquiry as to whether the school could handle such a program.

11.    RRHS was not prepared for the students as there is no sensory room and or calm down area.

12.    The Behavior Intervention Team ("BIT") is/was composed of people that do other jobs, some were teachers but most were school security officers ("SSO").

13.    RRHS employees were not trained for the egregious nature of the students behaviors and physical aggression.

14.    The Claimant reported the assaults and behavior to the administration, including but not limited to Defendants Duellman and Fitzgerald, as was expected in the chain of command.

15.     Despite Plaintiff's reports, Defendants failed to take adequate measures to protect Plaintiff from further assaults.

16.     On February 2, 2023, Plaintiff suffered injury to her right hand.

17.     The student HK was walking around the track with the Claimant during Adapted PE, the student was talking and listening to music, all of a sudden the student grabbed Claimants right hand and fingers and hyper extended them until Claimant could pry his hand off with Claimant's other hand.

18.     Plaintiff suffered immediate swelling, pain and discoloration.

19.     Plaintiff reported the assault to the administration.

20.     Plaintiff was sent to the emergency room.

21.     On April 2, 2023, Plaintiff suffered injury to her left shoulder.

22.     Plaintiff was sitting at the center table working on data information for the meeting, Plaintiff was using her phone as a calculator next to the laptop, three behavior analysts were present in the room when HK walked over and took the cell phone without notice and then walked across the room turned around and threw it at the Plaintiff hitting her left shoulder breaking the phone and case.

23.     Plaintiff reported the assault to the school administration.

24.     The school nurse was called; photographs were taken daily of Plaintiff's shoulder by the school security office and Plaintiff herself.

25. Plaintiff suffered immediate redness swelling and then a hematoma and massive bruising.

26. On May 6, 2023, Plaintiff suffered a right knee injury.

27. Plaintiff was teaching in front of the room using the Promethean board.

28. The student HK asked if he could smell Plaintiff.

29. Plaintiff replied "No".

30. HK tried to touch Plaintiff.

31. Plaintiff said "No" and redirected him to continue working, HK complied and continued to answer questions from the board.

32. Plaintiff continued with the lesson and HK turned and kicked Plaintiff directly in the right knee.

33. Upon the impact to the knee, there was a loud pop with immediate burning pain.

34. The behavioral analyst in the room, Justyn, helped hold Plaintiff upright so that she did not fall on the floor.

35. The school nurse was called and Plaintiff was referred to the emergency room.

36. On October 6, 2023, HK spit on Plaintiff in the face, grabbed her waistband and tried to touch and grab the zipper of her pants to remove them.

37.    Plaintiff reported the assault to the assistant principal Mike Fitzgerald and SPED Dean Jesse Hudson.

38.    On October 16, 2023, Plaintiff suffered a sexual assault at the hands of HK.

39.    HK smiled and grabbed Plaintiff's left breast and slapped her arm as she was moving to protect her body. HK was told that hitting and grabbing Plaintiff's body is not wanted or allowed.

40.    HK was asked to sit down and take a time out for three (3) minutes, he complied and when the time was up he rejoined his classmates participating in PE.

41.    HK continued to express that he wanted to "kick Ms. Liggio and hit her hard" and then added "he will spit on Ms. Liggio."

42.    HK then stated to Mr. Matt and Ms. Liggio that he "was going to smell her on the back and touch her from behind inappropriately with the Su."

43.    HK referred to his penis as his "sue-sue" (also when written sometimes spelled as "sho" and "su").

44.    Mr. Hudson was notified and student's parents were called. Dad came to school for a conversation and to collect the student. Ms. Liggio stated to Dad that since Student had already physically assaulted her and is making threats to sexually assault her, he could not stay in her class and needed to go home.

45.    The October 16, 2023 sexual assault was reported to the administration.

46.    Defendant Fitzgerald submitted the Incident Report to the Title IX Office. [Case No. 4226].

47.    Defendants LCSB and Pereira failed to conduct a mandatory Title IX investigation.

48.    Every month the Plaintiff compiled data that had been taken daily in 30-minute increments on each student's behavior and each IEP goal the student has.

49.    The first Data meeting was at the beginning of November 2023.  The meeting consisted of Liz Martinez, Mike Fitzgerald, Joy Engstrom and four (4) BCBA- SNIF -B or SNIP P).

50.    This meeting wasn't to collect the data as expected, instead Joy asked Plaintiff about HK.

51.    Plaintiff advised the meeting attendees about the sexual assault and Title IX filing.

52.    The meeting attendees proceeded to try and one up Plaintiff with a story about last year's teacher being sexually assaulted and how funny that was, laughing continuously while sharing the retelling.

53.    Daphne provided to Plaintiff when talking about HK "I don't like the way it sounds and doesn't want to hear about it".

54.    Daphne advised Plaintiff to turn her back on HK when he was being aggressive and "just ignore" him.

55.    Plaintiff advised her that she does not agree with her tactics with students, such as providing one student with hand soap to eat instead of hand sanitizer.

56.    Plaintiff provided that ignoring and turning her back on the most aggressive violent student is not acceptable.

57.    November 29, 2023, Plaintiff suffered another sexual assault at the hands of HK.

58.    HK was walking with Plaintiff and scripted that he wanted to "peep on Ms. Liggio when she is in the restroom."

59.    Plaintiff stated she did not want that.

60.    HK asked if Plaintiff was interested in HK pushing Plaintiff down on the wet floor and lay on top of her and hurt her with his SuSu.

61.    Plaintiff stated she did not want him to do that.

62.    In the classroom Plaintiff was instructing students to prepare for next activity. HK then asked what happens if he hits Plaintiff on the face, if he hits Plaintiff on the back, if he hits Plaintiff (point to his stomach) on the side. HK tells Plaintiff he is going to push her down and spit on her and touch her with his su-su.

63.    Plaintiff says she does not want that and redirects HK to the task at hand. Ms. Liggio gives HK instructions to read the material to himself and then we will take turns. HK begins the task. Plaintiff gets up from HK's desk, crosses half

the classroom before HK strikes her with two hands from behind and tries to push her face down to the floor. Plaintiff does not fall and pivots to face HK and he spits directly in her face. Admin is called and present when HK walks towards Admin and kicks Plaintiff in the leg.

64.    Admin calls HK's parents and HK's father came to retrieve him.

65.    On November 30, 2023, Plaintiff is again sexually assaulted by HK.

66.    HK comes into class and scripts where he wants to hit Plaintiff. He described with words and hand gestures; he wants to push her down and touch her inappropriately.

67.    HK scripts each place on Plaintiff he wants to hit, including back, arm, leg, side and stomach and he scripted hitting Plaintiff in the face with both hands very hard.

68.    Plaintiff reported the November 29-30th assaults to administration.

69.    A report was made to the Title IX office for the assaults. [Case No. 490].

70.    Defendants again failed to conduct a mandatory Title IX investigation.

71.    Plaintiff was given a referral to the Employee Assistance Program.

72.    On December 1, 2023, Plaintiff was again assaulted suffering injury to her right hand.

73.     Four students and two behavioral analysts ("BA") along with Plaintiff were in the classroom when student HK began yelling, swinging his arms to hit, and trying to hit Plaintiff with his body. The Ukera Pads were utilized and the student lunged forward and grabbed Plaintiffs right hand and arm left fingerprints on her arm and bit down on her fingers and hand he would not release upon first command BA Minsinga yelled extremely loud and that startled the student enough for Plaintiff to pull her hand out of his mouth.

74.     Plaintiff suffered immediate bleeding, pain, bruising, and swelling.

75.     Plaintiff was referred to the emergency room.

76.     On December 14, 2023, HK threatened Plaintiff by repeatedly pretending to head butt Plaintiff and hit her in the face stopping short of contact each time.

77.     On December 18, 2023, HK continually scripted how and where he wants to hurt Claimant.

78.     On January 2, 2024, Plaintiff was assaulted by HK when he hit Plaintiff in the face and arm.

79.     On January 23, 2024, Plaintiff was again assaulted when HK hit Claimant, pinched the back of her hand and scratched her enough to draw blood.

80.     Plaintiff reported the assault to the special education Dean and the assistant principal.

81.    On February 6, 2024, HK was sent home for aggressive behavior.

82.    On February 20, 2024, HK hit Plaintiff continuously throughout the school day.

83.    HK was sent home for aggressive behavior.

84.    On February 21, 2024, HK hit Plaintiff nine times on the arm and elbow.

85.    Plaintiff reported the assaults to the special education Dean.

86.    On April 3, 2024, HK took Plaintiff's phone and threw it at staff. Phone struck Plaintiff on left shoulder.

87.    Plaintiff reported to the nurse who noted bruising 2.5-3inch in diameter.

88.    The list of assaults against Plaintiff is not exhaustive.

89.    Plaintiff was subjected to daily harassment, threats and assaults.

90.    Defendants failed to properly supervise HK despite knowing of the student's violent and sexually inappropriate behavior.

91.    Defendants failed to implement appropriate safety protocols to protect Plaintiff from HK.

92.    Plaintiffs working conditions became intolerable due to the constant threat of further assaults.

93.    Defendants failed to address the situation.

94.   Plaintiff was unable to continue working as a result of the physical and psychological injuries sustained from the assaults.

95.   Plaintiff submitted her resignation from her position on June 10, 2024 stating: "Throughout my time at LCPS, I have endured various challenges that have ultimately led me to conclude that continuing my employment here is no longer viable. It is regrettable that the professional standards and mutual respect I expect in the workplace have not been met."

96.   Plaintiff's resignation was rejected by the district on June 11, 2024.

97.   The special education supervisor provided to Plaintiff "Jamie I have failed you, I am so sorry".

98.   HK is a biological male.

99.   Plaintiff is a biological female.

100.   Plaintiff suffered the sexual assaults by HK due to her sex.

101.   Defendants continued to allow HK unriddled access to Plaintiff resulting in multiple sexual and physical assaults.

102.   Plaintiff was harmed by the Defendants actions.

103.   Defendant LCPS has a policy or custom of allowing sexual harassment to go unchecked within the district at all levels.

104.   Defendant LCPS has a policy or custom to circumvent federal regulations related to reporting and investigating Title IX complaints.

105.    The custom is so pervasive and widespread that it has affected both students and teachers alike within the district – a small sample can be see through recent federal litigation against the district.

## CAUSES OF ACTION

### FIRST COUNT – VIOLATION OF TITLE VII

### Hostile Work Environment

### (Against Defendant LCPS)

106.    Plaintiff incorporates the above paragraphs by reference.

107.    Plaintiff was an employee at LCPS at all times relevant herein, entitling her to rights under Title VII.

108.    LCPS, at all times relevant herein, employed more than fifteen employees, making it subject to Title VII.

109.    LCPS is required to abide by Title VII's prohibition on discrimination based on sex.

110.    Plaintiff belongs to a protected class based on sex.

111.    Plaintiff was subjected to unwelcome sexual harassment and assaults.

112.    Plaintiff was repeatedly sexually harassed and assaulted by a student while performing duties as a teacher at LCPS.

113.    The harassment was based on sex.

114.    The sexual nature of the assaults demonstrates that the harassment was based on Plaintiff's sex.

115.    Unlawful discrimination based on sex includes the creation or indifference to a severe or pervasive hostile work environment.

116.    Plaintiff was subjected to a hostile work environment when she suffered insurmountable assaults both of a physical and sexual nature spanning over an entire school year.

117.    This hostile work environment was so severe and pervasive that any reasonable employee in Plaintiff's position would feel the work environment was untenable and intolerable. It is not within the job duties of special education teacher's assistants to be sexually assaulted.

118.    Defendant knew or should have known about the hostile work environment in which it created.

119.    Defendant failed to take appropriate corrective action despite knowledge o the hostile work environment.

120.    Plaintiff complained numerous times to LCPS. It did nothing to alleviate the behavior.

121.    As a result of the hostile work environment, Plaintiff suffered emotional distress, physical assault and psychological trauma.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

    i.    Compensatory damages in an amount to be determined by a jury; and

    ii.    Punitive damages in an amount to be determined by a jury; and

    iii.    Interest, costs, and attorney's fees; and

    iv.    Any and all other remedies or damages allowable by law;

    v.    Such further other relief as the Court may deem just, proper, and appropriate.

## SECOND COUNT – VIOLATION OF TITLE IX

### (Against Defendant LCPS)

122.    Plaintiff incorporates the above paragraphs by reference.

123.    Plaintiff was an employee at LCPS at all times relevant herein, entitling her to rights under Title IX.

124.    LCPS receives federal funding.

125.    LCPS is required to abide by Title IX's prohibition on discrimination based on sex.

126.    Unlawful discrimination based on sex includes deliberate indifference to sexual harassment.

127.    Plaintiff was subjected to sexual harassment when she was sexually assaulted by HK.

128.    This sexual harassment was so severe and pervasive that no reasonable person could be expected to endure it; no special education employee is required to endure repeated sexual assaults at work. The fact that Plaintiff was forced to endure repeated sexual assaults at work effectively changed her employment conditions.

129.    LCPS had actual knowledge of the sexual harassment because Plaintiff complained several times to LCPS, including filing multiple Title IX complaints.

130.    LCPS was deliberately indifferent to the sexual harassment because it did not take action to alleviate the harassment.

131.    Instead, LCPS dismissed the Title IX reports without investigation leaving Plaintiff in danger of further sexual assaults.

132.    As a result of LCPS's actions and inactions, Plaintiff suffered multiple sexual assaults as the perpetrator was given curtailed access to Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

    vi.  Compensatory damages in an amount to be determined by a jury; and

   vii.  Punitive damages in an amount to be determined by a jury; and

  viii.  Interest, costs, and attorney's fees; and

   ix.  Any and all other remedies or damages allowable by law;

    x.  Such further other relief as the Court may deem just, proper, and appropriate.

## THIRD COUNT – VIOLATION OF EQUAL PROTECTION

## (Against All Defendants)

133.    Plaintiff incorporates the above paragraphs by reference.

134.    Deliberate indifference to sexual harassment by government schools violates the Equal Protection Clause.

135.    Unlawful discrimination based on sex includes deliberate indifference to sexual harassment.

136.    Plaintiff was subjected to sexual harassment when she was sexually assaulted on multiple occasions throughout the course of an entire school year.

137.    This sexual harassment was so severe and pervasive that no reasonable person could be expected to endure it; no special education employee is required to endure repeated sexual assaults at work. The fact that Plaintiff was forced to endure repeated sexual assaults at work effectively changed her employment conditions.

138.    LCPS had actual knowledge of the sexual harassment because Plaintiff complained several times to LCPS, including filing multiple Title IX complaints.

139.    LCPS was deliberately indifferent to the sexual harassment because it did not take action alleviate the harassment.

140.    During the relevant time period, Defendant Fitzgerald exercised the final authority of Rock Ridge High School and had the authority to stop the harassment.

141.    During the relevant time period, Defendant Fitzgerald exercised the final authority of Rick Ridge High School and had the authority to demand a Title IX investigation be completed due to the occurrence within his building.

142.    During the relevant time period, Defendant Pereira was the Title IX coordinator and exercised the final authority of the Title IX compliance for LCPS. Defendant Pereira failed to investigate the sexual assaults when reported.

143.    Defendant Pereira intentionally, or with deliberate indifference, listed the October 16, 2023 sexual assault of Plaintiff as not being sexual in nature allowing for the immediate dismissal of the complaints.

144.    Defendant Pereira intentionally, or with deliberate indifferent, listed the November 29-30, 2023 sexual assaults of Plaintiff as not being sexual in nature allowing for the immediate dismissal of the complaints.

145.    Defendants actions and inactions resulted in further injury to the Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

   xi.  Compensatory damages in an amount to be determined by a jury; and

  xii.  Punitive damages in an amount to be determined by a jury; and

 xiii.  Interest, costs, and attorney's fees; and

 xiv.  Any and all other remedies or damages allowable by law;

xv.  Such further other relief as the Court may deem just, proper, and appropriate.

## FOURTH COUNT – NEGLIGENT SUPERVISION

## (Against LCPS)

146.   Plaintiff incorporates the above paragraphs by reference.

147.   Defendant LCPS had a duty to supervise HK.

148.   Defendant had a duty to properly supervise all students, including HK, who assaulted plaintiff.

149.   Defendant breached that duty through negligent supervision.

150.   Despite knowing of the student's violent and sexually inappropriate behavior, Defendant failed to implement adequate supervision to prevent further assaults.

151.   The breach proximately caused plaintiff's injuries.

152.   Defendant's failure to properly supervise the student directly resulted in the continued assaults and Plaintiff's resulting injuries.

153.   Plaintiff suffered damages as a result.

154.   Plaintiff suffered physical injuries, emotional distress and medical expenses as a result of defendant's negligent supervision.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant providing the following relief:

xvi.   Compensatory damages in an amount to be determined by a jury; and

xvii.   Punitive damages in an amount to be determined by a jury; and

xviii.   Interest, costs, and attorney's fees; and

xix.   Any and all other remedies or damages allowable by law;

xx.   Such further other relief as the Court may deem just, proper, and appropriate.

## FIFTH COUNT – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

155.   Plaintiff incorporates the above paragraphs by reference.

156.   Defendants' conduct was intentional or reckless.

157.   Defendants' failure to take action to protect plaintiff after receiving reports of repeated sexual and physical assaults was intentional or reckless.

158.   The conduct was outrageous and intolerable.

159.   Allowing a teacher to be repeatedly sexually and physically assaulted by a student despite knowledge of the ongoing assaults is conduct that exceeds all bounds of decency and is utterly intolerable in a civilized community.

160.    The conduct caused emotional distress to plaintiff.

161.    Defendants' conduct directly caused plaintiff to suffer severe emotional distress.

162.    The emotional distress was severe.

163.    Plaintiff's emotional distress was so severe that it required professional psychological treatment and interfered with plaintiff's ability to work and engage in normal daily activities.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

xxi.    Compensatory damages in an amount to be determined by a jury; and

xxii.   Punitive damages in an amount to be determined by a jury; and

xxiii.  Interest, costs, and attorney's fees; and

xxiv.   Any and all other remedies or damages allowable by law;

xxv.    Such further other relief as the Court may deem just, proper, and appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury on all issues stated in this action.


Dated: July 10, 2025                        Respectfully Submitted,


                                            */s/ Solomon Radner*
                                            Solomon Radner, Esq. (*pro hac to be*
                                            *applied for*)
                                            THE LAW OFFICE OF KEITH ALTMAN
                                            17515 Nine Mile Road, Suite 1050
                                            Southfield, MI 48075
                                            Telephone: (248) 987-8929
                                            solomonradner@kaltmanlaw.com


                                            */s/ Benjamin North*
                                            Benjamin North
                                            Binnall Law Group
                                            717 King Street | Suite 200 |
                                            Alexandria, VA 22314
                                            Telephone: (703) 888-1943
                                            ben@binnall.com


                                            *Attorneys for Plaintiff*